## Max EDWARDS, MAXCO, d/b/a CENTURY 21 EDWARDS & COMPANY *v.* Kathleen PENNINO

82-50                                                   635 S.W.2d 246

Supreme Court of Arkansas
Opinion delivered June 21, 1982
[Rehearing denied July 19, 1982.]

*Tom Donovan* of *Witt & Donovan* and *Stephen E. Whitwell* of *Hurley & Whitwell,* for appellants.

*House, Holmes & Jewell, P.A.,* by: *Robert L. Robinson, Jr.* and *Scotty M. Shively,* for appellee.

*Cearley, Gitchel, Mitchell & Roachell,* for *amicus curiae* Arkansas Realtors Association.

JOHN I. PURTLE, Justice. The Pulaski County Chancery Court held appellant liable for damages to appellee resulting from the sale of appellee's real estate by appellant. The court held that the appellant failed to exercise reasonable care and diligence in not selling the property for a better price than he did. This appeal is from the decree awarding damages to appellee. We disagree with the trial court and reverse and remand the case for purposes stated later in this opinion.

The appellee and her husband purchased 20 acres of land from the trust department of Worthen Bank. The land

had been a part of the Gannaway estate prior to the sale by Worthen to the appellee and her husband. Two deeds were executed by Worthen, at the request of the appellee. A house was situated upon a 5-acre tract which was deeded separately from the 15-acre tract of vacant land. The total purchase price was $60,000 but the appellee requested that the sale be broken down to indicate payments of $18,000 for the 15 acres and $42,000 for the 5 acres and the house. Appellee borrowed the full purchase price of the entire tract, $33,600 on the 5-acre tract and $26,400 on the 15-acre tract.

Very shortly after the purchase the appellee contacted the appellant, a licensed real estate broker, about selling the property for her. She had previously worked for appellant as a real estate salesman; however, she had not been active within the past five years. The property was listed for a total sale price of $75,000. The listing also had the two parcels as separate properties and if sold separately the price of the 15-acre tract was to be $35,000 and the 5-acre tract, including the house, was to be $45,000. The listing was dated September 4, 1979, following appellee's purchase of the property on August 21, 1979. Therefore, she listed the property at a price of $15,000 or $20,000 above what she had purchased it for two weeks earlier. The record reveals that the appellee called the appellant and asked him to look at the property and handle the sale. The appellant went out and looked at the property and informed the appellee and her husband that in his opinion it was worth between $800 and $1,200 per acre. Neither the appellant nor appellee consulted an appraiser or any other person relative to the value of the property at the time of the listing.

On September 28, 1979, appellant procured a prospective buyer who offered $27,500 for the 15 acres. The appellee rejected the offer and countered with an offer of $30,000 for the property. The proposed buyer rejected the counter offer. On October 3, 1979, the same buyer renewed his interest and made an offer of $28,500 for the 15 acres which was accepted by appellee and her husband. However, the appellee decided not to close the deal stating that her husband coerced her into agreeing to the sale and later alleging that the appellant failed to represent her properly in the matter. The pur-

chasers sued for specific performance on November 7, 1979. Several other parties became involved in the litigation but we will restrict ourselves to the pertinent pleadings. The appellee filed a cross-complaint against the appellant alleging he caused her to list and sell the property at a price well below the market value. The appellant counterclaimed for a commission on the sale and alleged the appellee cancelled the listing thereby depriving him of commission on the sale of both parcels of land. The trial was a protracted one and involved more than one chancellor but the final result was that the trial court ruled the purchasers were entitled to specific performance on the contract relating to the 15 acres. At a later date the hearing on the present proceedings was conducted. On March 16, 1981, the special chancellor entered a decree awarding appellee judgment in the amount of $16,500 representing the difference between the sale price of $28,500 and the actual market value which the court placed at $45,000. In addition, the chancellor awarded the appellant judgment of $1,995 as a commission on the sale of the property for which he had decreed specific performance. He also awarded appellee a judgment of $16,500 because of appellant's breach of duty to exercise reasonable care and diligence on behalf of the appellee.

There was testimony from a number of appraisers and other people relating to the market value of this property on the date of the sale. We do not deem it relevant to set forth this information in view of the decision we have made.

We agree with the parties that this is a case of first impression in this court. Therefore, we must determine the standard to be utilized in situations similar to this. There are three standards of care which we could adopt in this case: first, is the standard for intentional misrepresentation or other acts of fraud committed by the listing agent or his representative; second, that liability would rest on the negligent acts of the broker or his agents; and, third, the theory of strict liability. An annotation in 94 A.L.R. 2d 468 (1964) contains a statement relating to the standard of care with which real estate brokers are charged. It is as follows:

It is the well-established rule that a real-estate broker,

who is not a mere middleman, but is employed by a principal to act as agent in a real-estate transaction, is under a duty to exercise reasonable care and skill, or that degree of care and skill ordinarily employed by persons of common capacity engaged in the same business, and that a broker is liable to his principal for all consequences directly flowing from his failure to exercise such degreee or ordinary care and skill in the handling of the matter entrusted to him.

The above standard of care was adopted by the Arkansas Court of Appeals in *Townsend* v. *Doss*, 2 Ark. App. 195, 618 S.W.2d 173 (1981). We think this is the proper standard to be adopted by this court. Therefore, we must examine the record to determine whether the appellant breached his duty of ordinary care and skill in the handling of this sale on behalf of the appellee. The record reveals that the appellee, a former salesman for appellant, initiated the listing in this case. At her request the appellant came to the property and looked at it and informed her he thought it was worth between $800 and $1,200 per acre. There had been no appraisal of the property and none was done at this time. There is no indication that the appellant indicated to the appellee that he knew the real value of the property or that he was working for the interest of any other person. Certainly, if the appellant had assured the appellee that he would get the full market value for the property, he would be held responsible for his representations. That is not the issue. She knowingly and voluntarily listed the property at the prices previously mentioned. She subsequently turned down an offer of $27,500 and made a counter-offer of $30,000. The buyer rejected the counter-offer and nothing further happened until October 3 when the same buyer submitted a second offer for $28,500. The appellant recommended that she accept this price. She did accept the offer but subsequently refused to close with the purchasers. The trial court ordered her to specifically perform the contract and there does not appear to have been an appeal from that decree.

To adopt the standard of care urged by the appellee would in effect put all real estate transactions in limbo for a

period of five years. Also, it would render the former seller of this property liable to the owner for the sale in which appellee purchased the property. We think neither the law nor public policy demands such a strict standard.

The question before us is not establishing the fair market value of the property at the time of the sale but whether the appellant breached his duty to the appellee. Under the circumstances and facts of the present case we find neither substantial evidence nor a preponderance of the evidence to support the decree of the trial court. The trial court apparently adhered to the rule which we have quoted above but found from the facts that the appellant had breached his duty of ordinary care and skill in handling the matter entrusted to him. We do not imply by this decision that a broker or salesman would never be liable for failure to determine the fair market value of real estate listed by him for sale. Certainly, the parties may agree or contract to do or not do any number of things. We are stating that the standard of performance under an arm's length real estate transaction is the standard set out previously. This case is reversed and remanded to the trial court with directions to enter a judgment on behalf of the appellant for $1,995 which represents the sales commission on the 15-acre tract of land.

Reversed and remanded.