Robert MEYER d/b/a Meyer Excavators Contractors *v.*
CDI CONTRACTORS, LLC

CA 07-1307                                                  284 S.W.3d 530

Court of Appeals of Arkansas
Opinion delivered May 21, 2008

*Dover Dixon Horne PLLC*, by: *Nona M. Robinson*, for appellant.

*Friday, Eldredge & Clark, LLP*, by: *James C. Baker, Jr.* and *Kimberly D. Young*, for appellee.

ROBERT J. GLADWIN, Judge. This is the third time that this case, which involves a construction contract, has been before us; on both previous appeals, we dismissed for lack of an appealable order. Appellant Robert Meyer, d/b/a Meyer Excavators Contractors, challenges the circuit court's entry of summary judg-

ment for appellee CDI Contractors, LLC, and the award of attorney's fees to CDI. We affirm the circuit court's decision in all respects.

Meyer filed a complaint against CDI in the Pulaski County Circuit Court, alleging that, in September 2001, it entered into a subcontract with CDI to perform earthwork as part of a construction project for the Church at Rock Creek, in which CDI had falsely represented to Meyer that it had a contract; that, in December 2001, CDI attempted to cancel the contract; and that Meyer's out-of-pocket costs associated with preparing to perform were $496,566 and his lost profits were $114,490. Claiming fraudulent inducement and breach of contract, Meyer requested damages of $636,055 and punitive damages in the amount of $1,300,000. Asking that the contract be rescinded, CDI responded that an unavoidable event had rendered the contract impossible to perform. Meyer filed an amended complaint alleging that his lost profits were $233,094 and requesting punitive damages of $700,000.

In June 2005, CDI moved for summary judgment, asserting that Meyer was barred from bringing his claims because he had entered into the underlying contract in violation of the Arkansas Contractors Licensing Law. CDI alleged that the church had asked it to obtain a bid from Meyer to perform a portion of the site work; that, when it contacted him about the bid, it learned that he was not a licensed contractor and was, therefore, disqualified from bidding on or entering into a contract for work in excess of $20,000; that it postponed the bidding process in order to allow him time to apply for his license, which he received in July 2001; that, as part of his application for a license, Meyer signed an affidavit, swearing that he was not currently performing any work costing $20,000 or more and did not have an outstanding bid for such work; and that this statement was not accurate, as he was working on a large project, the "Berry Farm Project," costing over $20,000. Among the supporting exhibits, CDI attached copies of Meyer's July 2001 license application; excerpts of his 2003 and 2005 depositions;[1] copies of his 2001 invoices for the "Berry Farm Project"; and an itemization of payments he received from June through August 2001. Citing Meyer's deposition testimony, CDI

[1] Although a substantial amount of the evidence supporting CDI's motion for summary judgment came from Meyer's depositions, Meyer did not abstract them, as required by Arkansas Supreme Court Rule 4-2(a)(5) but did include them in the addendum. We have not directed Meyer to cure the deficiency only because we were able to reach the merits of

asserted that, in July 2001, when Meyer applied for his license, he had billed over $84,700; had performed over $70,000 worth of work; and had collected over $90,800 for previous work on the Berry Farm Project. CDI argued that, because Meyer entered into this contract while holding a license that he had obtained by submitting false information, all of his claims were unenforceable under Arkansas Code Annotated section 17-25-103(d) (Repl. 2001), which stated: "No action may be brought either at law or in equity to enforce any provision of any contract entered into in violation of this chapter. No action may be brought either at law or in equity for quantum meruit by any contractor in violation of this chapter."

Appellant responded: "[Meyer] has controverted the facts alleged by [CDI] as detailed in [Meyer's] Brief in Support of this Response. [Meyer] incorporates by reference his Brief in Support of his Response." Meyer's brief, however, is not contained within the addendum, nor is it in the record. From CDI's reply brief, it appears that Meyer did submit this response in a brief:

> In Meyer's Brief in Response to CDI's Motion for Summary Judgment, Meyer fails to refute or counter *any* of the evidence presented by CDI in support of its motion. Specifically, Meyer does not deny the fact that he was working on a project in excess of $20,000 at the time he applied for his contractor's license, and he does not deny that he presented false information to the licensing board. As a result, it should be clear there are no genuine issues of fact remaining. Meyer's claims against CDI are barred as a matter of law under Ark. Code Ann. § 17-25-103 (2005)....

> . . . .

> Meyer makes three arguments in his Response Brief: (1) Meyer did not violate the Licensing Act because he did not know he was presenting false information to the board; (2) Meyer must not have violated the Licensing Act because his license was not revoked; (3) the statute of limitations applying to proceedings brought by the Licensing Board should apply to CDI's affirmative defense in this lawsuit.

CDI argued that this case could not be distinguished from *Williams v. Joyner-Cranford-Burke Construction Co.*, 285 Ark. 134, 685 S.W.2d 503

---

the case in spite of his inadequate abstract. *See* Ark. Sup. Ct. R. 4-2(b). Moreover, we can go to the record to affirm. *Murphy v. Forsgren, Inc.*, 99 Ark. App. 223, 258 S.W.3d 794 (2007).

(1985), in which the supreme court held that the $20,000 amount provided in the licensing statute applies to the total amount of a project, not just its subparts.

On July 26, 2005, the circuit court entered an order granting CDI's motion for summary judgment, stating:

> Here, [appellant] entered into a contract with CDI Contractors, LLC in violation of the Arkansas Contractors Licensing Act. Specifically, he presented false evidence to the Licensing Board by affirming in an affidavit that, at the time he applied for his license, he was not working on any project the cost of which exceeded $20,000. This was false. The undisputed evidence has shown that [appellant] was in the midst of a multi-million dollar project, called "The Berry Farm Project," at the time he applied for his license, earning hundreds of thousands of dollars in the month in which he applied for his license alone. In sum, [appellant] presented false evidence to the Licensing Board in order to obtain his contractors license, used such license to enter into a contract with CDI, then sued to enforce the very contract he entered into in violation of the Licensing Statute. Strictly construing Ark. Code Ann. § 17-25-101 et seq., the Court finds that [appellant's] claims against CDI are statutorily barred and must be dismissed.

> . . . .

> Applying *Williams* to the facts at hand, the Court finds that the cost of the Berry Farm Project, on which [appellant] was working when he applied for his contractors license, far exceeded $20,000. Therefore, he presented false evidence to the Licensing Board when he affirmed that he was not working on any project in excess of $20,000. Because [appellant] entered into the contract with CDI in violation of the Arkansas Contractors Licensing Act, his claims are statutorily barred and are hereby dismissed.

CDI moved for an award of attorney's fees under Arkansas Code Annotated section 16-22-308 (Repl. 1999), which permits the circuit court to award fees to the prevailing party in any civil action to recover on a contract, and attached the affidavit of its counsel, James C. Baker, Jr., and copies of his time records. Meyer responded that this case did not warrant an award of attorney's fees because it sounded primarily in tort and, in any event, the requested fee was not properly documented. He also argued that the request was not reasonable and should be limited to $23,309,

because CDI had known the relevant facts about his contractor's license for over three years. Finding that this case sounded primarily in contract, the circuit court entered an order granting $40,000 in attorney's fees to CDI. After the two appeals that were dismissed because of procedural problems, the circuit court issued a final order on November 5, 2007. The merits of this appeal are now ripe for decision.

Summary judgment should be granted only when it is clear that there are no genuine issues of material fact, and the party is entitled to judgment as a matter of law. *Smith v. Farm Bureau Mut. Ins. Co. of Ark., Inc.*, 88 Ark. App. 22, 194 S.W.3d 212 (2004). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On review, we must determine whether there are any genuine issues of material fact. *Id.* In our review, we consider whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* All proof is viewed in the light most favorable to the party resisting the motion, with all doubts and inferences resolved against the moving party. *Id.*

In his first point, Meyer asserts that the circuit court erred in granting summary judgment on his fraudulent-inducement claim, because the contractor's licensing statutes, even if violated, do not expressly bar a contractor from suing for fraud, even though the allegedly fraudulent actions may arise from circumstances surrounding an unenforceable contract. Arkansas Code Annotated section 17-25-103(d), which is punitive in nature, must be strictly construed and, if a provision is not clear and positive, every doubt as to its construction must be resolved in favor of the one against whom the enactment is sought to be applied. *Meadow Lake Farms, Inc. v. Cooper*, 360 Ark. 164, 200 S.W.3d 399 (2004); *Wilcox v. Safley*, 298 Ark. 159, 162-A, 766 S.W.2d 12, 771 S.W.2d 741 (1989) (supplemental opinion denying rehearing). In *Sisson v. Ragland*, 294 Ark. 629, 745 S.W.2d 620 (1988), the supreme court held that a party could pursue a claim for quantum meruit even if the statute prevented enforcement of the contract. In 1989, the General Assembly amended the statute to expressly bar claims for quantum meruit. Meyer asserts that, because the statute does not specifically prohibit claims for fraudulent inducement, a strict construction of it requires us to hold that such claims may be pursued. CDI urges us to hold that the statute

bars all actions, however they are characterized, that essentially seek compensation for contract work done in violation of the statute. In this appeal, we need not decide whether all fraud claims are barred by the statute but have no hesitation in holding that, under the facts of this case, Meyer's fraudulent-inducement claim is barred.

As Meyer points out in his brief, some states have permitted such claims to go forward. *See Trees v. Kersey*, 56 P.3d 765 (Idaho 2002). Others have held that such a statute will also bar fraud claims. In *White v. Miller*, 718 So. 2d 88, 90 (Ala. Civ. App. 1998), the court explained:

> The amount of damages claimed by the contractor in his amended counterclaim is specifically the same amount claimed in his original counterclaim. In other words, the damages that the contractor seeks for fraud and deceit are measured by the value of the work and labor performed under the contract. Hence, it is logical to conclude in this situation that the contractor's claims for fraud and deceit are intrinsically founded on, and are intertwined with, the facts surrounding the underlying contract. As such, the contractor cannot prevail. Stated differently, the contractor cannot circumvent the licensing statute by asserting claims for fraud and deceit when the facts surrounding his claims are grounded in contract. *Architectural Graphics & Constr. Servs., Inc. [v. Pitman*, 417 So. 2d 574 (Ala. 1982)].

Meyer cites *Pickens v. American Mortgage Exchange*, 74 Cal. Rptr. 788 (Cal. Ct. App. 1969), and *Brunzell Construction Co. v. Barton Development Co.*, 49 Cal. Rptr. 667 (Cal. Dist. Ct. App. 1966), as supporting his position. Those decisions, however, were limited to their facts and distinguished in *Hydrotech Systems, Ltd. v. Oasis Waterpark*, 803 P.2d 370 (Cal. 1991), where the California Supreme Court stated:

> In a garden-variety dispute over money owed an unlicensed contractor, the contractor cannot evade section 7031 by alleging that the express or implied promise to pay for his work was fraudulent. However artful the pleadings, if the primary fraud alleged is a false promise to pay for unlicensed construction work, and the primary relief sought is compensation for the work, section 7031 bars the action.

803 P.2d at 379. We believe that the same reasoning applies to this case.

■ Here, regardless of how Meyer has framed his pleadings, his claim for fraud is intrinsically founded on, and intertwined with, the facts surrounding the underlying contract, and the primary relief he seeks — his lost profits — is the benefit of his bargain. Given these facts, we hold that his fraudulent-inducement claim was barred by Arkansas Code Annotated section 17-25-103(d).

■ Meyer argues in his second point that a genuine issue of material fact exists as to whether the Berry Farm was property "for lease, rent, resale, public access, or similar purpose" as provided in Arkansas Code Annotated section 17-25-101(a)(1) (Repl. 2001), and therefore, CDI failed to establish that he was a "contractor" subject to the Act. Meyer, however, did not make this argument to the trial court. We need not consider arguments raised for the first time on appeal. *Baptist Health v. Murphy*, 365 Ark. 115, 226 S.W.3d 800 (2006).

■ Meyer adds that he did not intend to give false information in applying for his contractor's license and that whether he did was a jury question preventing the entry of summary judgment. We disagree. Arkansas Code Annotated section 17-25-103 does not require that the applicant *intend* to give false information in order to be subject to its terms.

In his third point, Meyer contends that the circuit court abused its discretion in awarding any attorney's fees to CDI. Alternatively, he argues that $40,000 (of the $79,000 CDI requested for over 600 hours of work) was too much to award because CDI prevailed without going to trial. Meyer points out that, although this case was filed in 2002, CDI did not file this motion for summary judgment until 2005, even though it had notice of his potential licensing problems after his first deposition was taken in March 2003.

The general rule in Arkansas is that attorney's fees are not awarded unless expressly provided for by statute or rule. *Millwood-RAB Mktg., Inc. v. Blackburn*, 95 Ark. App. 253, 236 S.W.3d 551 (2006). Arkansas Code Annotated section 16-22-308 (Repl. 1999) provides for a reasonable attorney's fee to the prevailing party in certain civil actions, including actions for breach of contract.[2] A

---

[2] Meyer has not appealed from the circuit court's ruling that this case sounded primarily in contract.

trial judge is not required to award attorney's fees. *Taylor v. George*, 92 Ark. App. 264, 212 S.W.3d 17 (2005). Because of the trial judge's intimate acquaintance with the trial proceedings and the quality of service rendered by the prevailing party's counsel, we usually recognize the superior perspective of the trial judge in determining whether to award attorney's fees. *Chrisco v. Sun Indus.*, 304 Ark. 227, 800 S.W.2d 717 (1990). The decision to award attorney's fees and the amount to award are discretionary determinations that will be reversed only if the appellant can demonstrate that the trial court abused its discretion. *Nelson v. River Valley Bank & Trust*, 334 Ark. 172, 971 S.W.2d 777 (1998).

There is no fixed formula in determining what is reasonable, but a trial court should be guided by the following long recognized factors:

> (1) the experience and ability of counsel; (2) the time and labor required to perform the legal service properly; (3) the amount involved in the case and the results obtained; (4) the novelty and difficulty of the issues involved; (5) the fee customarily charged in the locality for similar services; (6) whether the fee is fixed or contingent; (7) the time limitations imposed upon the client in the circumstances; and (8) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

*South Beach Bev. Co. v. Harris Brands, Inc.*, 355 Ark. 347, 356, 138 S.W.3d 102, 108 (2003).

■ Meyer's argument for reversal of the fee award is not persuasive. It was in his March 2005 deposition that the full extent of his work as a contractor was revealed. Given the amount of discovery that was necessary before CDI had the documentation to verify and demonstrate that Meyer gave false information to the licensing board, the large amount of damages sought by Meyer, and the completely successful result obtained by CDI, we cannot say that the circuit court abused its discretion in awarding fees of $40,000 to CDI.

Affirmed.

HART and MARSHALL, JJ., agree.