2010 Ark. App. 384

**NCCF SUPPORT, INC., Trustee of The Charles and Mildred Smith Charitable Remainder Unitrust, Appellant**

v.

**HARRIS McHANEY REAL ESTATE COMPANY, Appellee.**

No. CA 09–842.

Court of Appeals of Arkansas.

May 5, 2010.

---

James H. Bingaman, Roy, Lambert & Lovelace, LLP, Springdale, David J. Myers, FSB Legal Counsel, A Fisher Broyles LLP, Alpharetta, for appellant.

Charles L. Schlumberger, Quattlebaum, Grooms, Tull & Burrow PLLC, Little Rock, for appellee.

M. MICHAEL KINARD, Judge.

NCCF Support, Inc. (NSI), as Trustee of the Charles and Mildred Smith Charitable Remainder Unitrust, appeals from an order of the Benton County Circuit Court granting summary judgment in favor of appellee, Harris McHaney Real Estate Company (HMRC), on a third-party complaint brought by NSI against HMRC and a separate order by the trial court awarding HMRC attorney's fees.[1] Because there are unresolved issues of material fact, we reverse the order of the circuit court granting summary judgment and remand this matter back to the circuit court for further proceedings. As the award of attorney's fees was premised on the grant of summary judgment in favor of

---

1. The circuit court certified both the summary judgment order and the order awarding HMRC attorney's fees as final for the purposes of appeal pursuant to Arkansas Rule of Civil Procedure 54(b).

HMRC, the order awarding attorney's fees is reversed as well.

NSI held in trust a 15.4–acre tract of land located in Benton County, which was referred to by the parties as the "Original Smith Property." In May 2003, NSI sold a 1.45–acre parcel of that tract to Mikle and Belinda Watts. As part of the sale to the Wattses, NSI prepared a document titled "Declaration of Covenants," which contained various restrictions on the use of both the 1.45–acre parcel and the remaining 13.95 acres of the original tract. At the closing of the sale from NSI to the Wattses, the document was filed of record; however, at the time it was filed, the document did not contain a legal description of the property affected by the covenants.

On September 22, 2004, NSI entered into an exclusive listing agreement with HMRC. Paragraph eighteen of the listing agreement states as follows:

> 18. **SELLER'S STATEMENT:** Seller warrants that all information furnished to Listing Agent Firm concerning the Property, including without limitation the information set forth in the Seller Property Disclosure attached hereto and incorporated herein, is complete and accurate to the best of Seller's knowledge and that no material facts have been withheld from the Listing Agent Firm. Unless a potential purchaser desires not to obtain a copy of the Seller Property Disclosure (as evidenced by an oral statement or in a Real Estate Contract), Listing Agent Firm is authorized to use reasonable effort to disclose to any member of the public interested in the Property the Seller Property Disclosure form attached hereto, or any other material information known or made known to Listing Agent Firm about the Property, including without limitation any defects relating to the Property. Seller agrees to defend, indemnify, save and hold Listing Agent Firm harmless from all liability or claims arising from Seller's incorrect or undisclosed information. Seller agrees to notify in writing Buyer or Listing Agent Firm of any changes in the Seller Property Disclosure which may become known to Seller after this date.

NSI did complete a Seller Property Disclosure form. Paragraph ten of that form states: "Are there any Bills of Assurance, deed restrictions, other obligations, or other use restrictions for the Property that a title search would not reveal?" In response to the question in paragraph ten, NSI checked the box labeled "Unknown," as it did for all of the questions listed on the Seller Property Disclosure form. In October 2004, NSI provided HMRC with a copy of the Declaration of Covenants that did not contain the legal description of the property.

The remaining 13.95 acres of the Original Smith Property were purchased by Mark and Cinda Lu Maddox in February 2005. In May 2007, the Wattses sued the Maddoxes and NSI, claiming that the Maddoxes used their portion of the tract in a manner that violated the restrictions contained in the Declaration of Covenants and seeking to enforce the covenants against the Maddoxes. Alternatively, the Wattses sought damages against NSI, claiming that NSI breached the warranty in its deed to them and that NSI was negligent in allowing the covenants to be recorded without a legal description, resulting in the covenants failing to be located in a title search. The Maddoxes moved for summary judgment, arguing that the covenants were unenforceable as to them because they had not been properly recorded and the Maddoxes otherwise had no knowledge of them. The circuit court granted the Maddoxes' motion for summary judgment. The Wattses' remaining

claims against NSI were unaffected by the grant of summary judgment in favor of the Maddoxes.

NSI filed a third-party complaint against HMRC on April 22, 2008, alleging breach of the listing agreement and professional negligence by HMRC in its capacity as a real estate broker. In its complaint, NSI asserted that HMRC had erroneously reported to the Multiple Listing Service (MLS) that there were no restrictions on the property and that the erroneous listing was not corrected even after NSI provided HMRC with a copy of the covenants. In its answer to NSI's complaint, HMRC asserted that NSI's own actions and omissions in failing to disclose the existence of the covenants on the Seller Property Disclosure form and in failing to see that the covenants were properly recorded barred NSI from asserting liability against HMRC.

On September 4, 2008, HMRC filed a motion for summary judgment on the following grounds: 1) that, as a licensed real estate broker, it was forbidden by law from rendering advice or an opinion as to the legal effect of instruments in the chain of title or the validity of title to real estate; 2) that NSI committed a prior material breach by failing to deliver to HMRC a full and complete copy of the Declaration of Covenants, including the legal description of the affected property; 3) that NSI agreed to indemnify and hold HMRC harmless from any claims resulting from NSI's failure to properly disclose relevant information. In its response to the motion for summary judgment, NSI contended that the mere disclosure of the existence of the covenants would not constitute the unauthorized practice of law. NSI also denied that it breached its listing agreement with HMRC.

The circuit court held a hearing on HMRC's motion for summary judgment.

In an order entered on April 9, 2009, the circuit court granted HMRC's motion. On April 15, 2009, HMRC filed a motion for attorney's fees. The circuit court granted the motion and awarded HMRC $5,377 in attorney's fees. NSI appealed from both the order granting summary judgment and the order awarding attorney's fees.

For its first point on appeal, NSI argues that the circuit court erred in granting summary judgment to HMRC. Summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated and the moving party is entitled to judgment as a matter of law. *Sykes v. Williams*, 373 Ark. 236, 283 S.W.3d 209 (2008). Summary judgment should be denied if, under the evidence, reasonable minds might reach different conclusions from the undisputed facts. *Brock v. Townsell*, 2009 Ark. 224, 309 S.W.3d 179. We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Once the moving party has established a prima facie case for summary judgment, the opposing party is required to meet proof with proof and demonstrate the existence of a disputed material fact. *Kearney v. City of Little Rock*, 2009 Ark. App. 125, 302 S.W.3d 629.

In the order, the circuit court stated that, due to the lack of a description of the property, the Declaration of Covenants was incomplete. The trial court further stated that, as a result, the proper response to paragraph ten of the Seller Property Disclosure form was "yes," although the court stated that NSI believed at the time that "unknown" was an accurate answer. The court found that HMRC was entitled to rely upon NSI's representations in the disclosure form. The court also found that HMRC's obli-

gation was to deliver to prospective buyers any deed or use restrictions that included a legal description of the affected property. According to the court, because the Declaration of Covenants contained no legal description, HMRC was under no duty to provide the declaration to any prospective buyer, including the Maddoxes. We hold that the trial court erred in granting summary judgment to HMRC.

One source of any duty on the part of HMRC regarding the disclosure or provision of the restrictions upon the subject property is the listing agreement contract between the parties. The most salient provision in the contract is paragraph eighteen, set out above, which states, in part, that HMRC was "authorized to use reasonable effort to disclose to any member of the public interested in the Property the Seller Property Disclosure form attached hereto, or any other material information known or made known to [HMRC] about the property, including without limitation any defects relating to the property." It is unclear from the language of paragraph eighteen, in particular the phrase "authorized to use reasonable effort," whether the parties intended that HMRC would have a duty to pass along relevant information regarding the property provided to it by NSI. The language in paragraph eighteen is ambiguous. The question of the duties arising out of the contract is one of law unless the contract is ambiguous, in which case the parties' intent becomes a question of fact. *Easterling v. Weedman*, 54 Ark.App. 22, 922 S.W.2d 735 (1996).

NSI produced evidence in its response to the motion for summary judgment, in the form of deposition testimony by Sherry Hardie, the real-estate agent with HMRC who listed the property, to support its position regarding the intent of the parties. Hardie testified at her deposition that it was her practice, when she knew that there were covenants on the property, to send them to the realtor representing the prospective buyers if they were requested. In her deposition testimony, Hardie made no distinction between covenants that contained a legal description and covenants that did not. In addition, Hardie testified at her deposition that she provided a copy of the Declaration of Covenants to another prospective buyer whom HMRC also represented, although she did not provide a copy to the Maddoxes, whom HMRC did not represent.

In addition to the breach-of-contract claim, NSI also asserted a claim in tort for professional negligence. Although our review of HMRC's summary judgment motion demonstrates that it centered mainly on the contract claim, the trial court, in its order, appears to have dismissed the negligence claim as well. We note that the trial court's order does not expressly address the negligence claim, nor do either of the parties discuss the claim in their briefs. Regarding the professional duty of real estate agents, our supreme court has stated that

It is the well-established rule that a real-estate broker, who. is not a mere middleman, but is employed by a principal to act as agent in a real-estate transaction, is under a duty to exercise reasonable care and skill, or that degree of care and skill ordinarily employed by persons of common capacity engaged in the same business, and that a broker is liable to his principal for all consequences directly flowing from his failure to exercise such degree of ordinary care and skill in the handling of the matter entrusted to him.

*Edwards v. Pennino*, 276 Ark. 380, 382–83, 635 S.W.2d 246, 248 (1982) (quoting 94 A.L.R.2d 468 (1964) and adopting the standard set forth by this court in *Townsend v.*

*Doss,* 2 Ark.App. 195, 618 S.W.2d 173 (1981)). It is clear, then, that a real estate agent has a duty to exercise reasonable care and skill. As noted above, NSI produced evidence that HMRC did not correct the MLS listing and that it did not provide a copy of the declaration to the Maddoxes. Although we, of course, are not expressing an opinion that the actions by HMRC violated its duty of care, the evidence produced by NSI is sufficient to create a question to be decided by the trier of fact.

Because NSI "met proof with proof" in its response, there remain unresolved questions of material fact on NSI's contract claim and its tort claim that must be addressed by the trier of fact. The grant of summary judgment by the trial court was premature. The order granting summary judgment is hereby reversed.

HMRC argues that NSI marking "unknown" in response to question ten on the property disclosure form, when NSI had prepared and possessed the incomplete covenants, constituted a material breach by NSI that released HMRC from any obligation to provide the restrictions to a prospective buyer. When performance of a duty under a contract is contemplated, any nonperformance of that duty is a breach. *Vereen v. Hargrove,* 80 Ark. App. 385, 96 S.W.3d 762 (2003). Whether a breach of contract occurred is a question of fact. *See Worch v. Kelly,* 276 Ark. 262, 633 S.W.2d 697 (1982). As a general rule, the failure of one party to perform his or her contractual obligations releases the other party from his or her obligations. *Taylor v. George,* 92 Ark.App. 264, 212 S.W.3d 17 (2005). In order for a party's obligations to be discharged, the other party's breach must be material. *Id.* Because there remains a fact question regarding the scope of the obligations contemplated by the parties under the contract, it cannot be presently determined as a matter of law whether NSI's response to question ten on the property disclosure form constituted a material breach by NSI that would release HMRC from its contractual duties.

HMRC argued both before the trial court and on appeal that it was forbidden from providing a copy of the covenants to a prospective buyer because such an exercise would constitute the unauthorized practice of law. This appears to be a contradictory stance for HMRC to take, as HMRC provided a copy of the covenants to a prospective buyer other than the Maddoxes, but not to the Maddoxes themselves. In any event, it is clear that HMRC's contention—that the mere act of providing covenants that were recorded without a description of the property attached constitutes the unauthorized practice of law—is incorrect.

In support of its contention that such activity would constitute the unauthorized practice of law, HMRC cites our supreme court's decision in *Pope County Bar Association, Inc. v. Suggs,* 274 Ark. 250, 624 S.W.2d 828 (1981). In that case, the Pope County Bar Association brought suit to enjoin real-estate brokers in that county from completing certain instruments involving real estate transactions without consulting a lawyer. Our supreme court affirmed the decree of the chancellor, who determined that real-estate brokers could fill in the blanks of certain standardized, printed forms in connection with simple real-estate transactions, provided that the forms had been prepared by an attorney, and subject to six specific restrictions. The sixth restriction stated "that the broker shall not give advice or opinions as to the legal rights of the parties, as to the legal effects of instruments to accomplish specific purposes or as to the validity of title to real estate." *Pope County Bar Ass'n,* 274 Ark. at 253, 624 S.W.2d at 829. HMRC contended before the trial court

and contends on appeal that the act of disclosing the covenants in their incomplete form would run afoul of the sixth condition. We fail to see how the mere act of disclosure alone in any way constitutes a violation of the sixth restriction. HMRC would neither be giving an opinion as to the legal rights of the parties, nor would it be opining as to the legal effects of the covenants.

■ HMRC also moved for summary judgment before the trial court on the grounds that NSI agreed in the listing agreement to indemnify and hold HMRC harmless from any claims resulting from NSI's failure to properly disclose relevant information. The pertinent portion of the listing agreement states: "Seller agrees to defend, indemnify, save and hold Listing Agent Firm harmless from all liability or claims arising from Seller's incorrect or undisclosed information." The circuit court did not rule on indemnity. Indeed, it could not have properly granted summary judgment on the grounds of the indemnity provision because there remains a question of fact as to whether the indemnity provision applies. It is true that NSI did not affirmatively indicate on the Seller Property Disclosure form that there were restrictions on the property that a title search would not disclose. However, NSI did disclose the existence of the restrictions and provide them to HMRC prior to the Maddoxes' purchase of the property. Therefore, there remains an unresolved question of fact regarding whether the Wattses' claim "arises from [NSI]'s incorrect or undisclosed information," or whether it arises from HMRC's failure to provide the Maddoxes with a copy of the restrictions. This question must be resolved by the trier of fact.

The answer to the unresolved fact question is key with regard to the applicability of the indemnity provision because it is clear from the language of the contract that NSI is not agreeing in the listing agreement to indemnify HMRC for HMRC's own negligence. Regarding agreements to indemnify an indemnitee for its own negligence, our supreme court has stated that

agreements to indemnify an indemnitee against its own negligence are generally disfavored, closely scrutinized, strictly construed against the indemnitee and in favor of the indemnitor, and will not be upheld unless expressed in such clear and unequivocal terms that no other meaning can be ascribed. However, strict construction need not be applied in interpretation of indemnification agreements entered into by business entities in the context of free and understanding negotiation.

*Potlatch Corp. v. Missouri Pacific R.R. Co.*, 321 Ark. 314, 321, 902 S.W.2d 217, 222 (1995) (citations omitted). The language of paragraph eighteen does not clearly state that NSI is agreeing to indemnify HMRC against its own negligence. Therefore, such an agreement cannot be held to exist under the listing agreement.

NSI also appeals from the trial court's award of attorney's fees. Because the award of attorney's fees to HMRC was premised upon its success in obtaining a grant of summary judgment from the trial court, and we have reversed the order of the trial court and remanded the case for further proceedings in the circuit court, we also reverse the award of attorney's fees.

■ There remains one final matter for us to consider. Following the oral arguments by the parties to this appeal, counsel for appellant submitted to this court a letter in which he directed the court's attention to certain deposition testimony that is in the record on appeal but was neither abstracted nor included in the addendum of either party's brief. Appel-

lee has filed a motion before this court to strike appellant's letter. Although we are allowed to go to the record to affirm a trial court's decision, *Meyer v. CDI Contractors, LLC*, 102 Ark.App. 290, 284 S.W.3d 530 (2008), we do not have that option in this case. Because appellant failed to include the deposition testimony referenced in its letter in its brief, the deposition testimony was not considered by this court in rendering its opinion. Appellee's motion to strike the letter is granted.

Reversed and remanded; motion granted.

ROBBINS and MARSHALL, JJ., agree.