

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV–14–565

| | |
|---|---|
| GEORGE WILCOX and WILCOX INVESTMENT LIMITED PARTNERSHIP<br><br>APPELLANTS<br><br>V.<br><br><br>BRAD H. WOOLEY, Individually; BRAD H. WOOLEY AUCTIONEERS, INC.; RUSSELL HUCKABY, Individually; UNITED COUNTRY–MARKET STATION REAL ESTATE & AUCTIONEERS; and WOOLEY & HUCKABY AUCTIONEERS & LAND BROKERS, LLC<br><br>APPELLEES | Opinion Delivered February 4, 2015<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SEVENTEENTH DIVISION [NO. 60CV-2011-6220]<br><br>HONORABLE MACKIE M. PIERCE, JUDGE<br><br>AFFIRMED |

**RITA W. GRUBER, Judge**

George Wilcox and his limited partnership, Wilcox Investment Limited Partnership, (collectively, Wilcox) bring this appeal from a summary judgment in favor of Brad H. Wooley Auctioneers, Inc.; Russell Huckaby; United Country–Market Station Real Estate Auctioneers; and Wooley & Huckaby Auctioneers & Land Brokers, LLC (collectively, the Auctioneers) on Wilcox's third-party claims that the Auctioneers breached their contract with Wilcox when they failed to stop an auction of Wilcox's real property. Finding no merit in Wilcox's arguments, we affirm the circuit court.

*Background*

On October 31, 2011, Wilcox entered into a contract with the Auctioneers to market and sell approximately 333 acres of real property owned by the partnership in Pulaski County. It was to be an "absolute" auction, without reserve and regardless of price. The sale was scheduled for December 2, 2011.

In his deposition, Wilcox testified that, as the sale approached, he was having reservations and was inclined to cancel the auction the day before it was scheduled. He further testified that because the Auctioneers agreed to cancel the auction if the bidder turnout was low, he decided not to cancel the sale.

Only four bidders attended the sale. Wilcox did not attend, but was represented by two of his children and his attorney. Wilcox further testified by deposition that he was on the phone with his daughter Kaye Wilcox when the Auctioneers suggested that they cancel the sale just before the scheduled time to begin. Wilcox testified that he relayed his agreement to the postponement through his daughter. The Auctioneers dispute that any agreement to halt the sale was made. Nevertheless, the Auctioneers started the bidding, and Ken Shollmier was declared the highest bidder with a bid of $235,000. Wilcox, contending that the property was appraised in excess of $950,000, refused to complete the sale.

Shollmier sued to compel Wilcox to proceed with the sale.[1] Shollmier twice amended his complaint. Wilcox answered, raising affirmative defenses and requesting a jury trial. Wilcox also asserted that Shollmier engaged in collusion during the bidding process such

---

[1]Shollmier is not a party to this appeal.


that the sale should be voided.

Wilcox filed a motion for leave to file a third-party complaint against the Auctioneers. The circuit court granted leave to file the third-party complaint. In the complaint, Wilcox repeated the previous allegations that the Auctioneers had breached their agreement to cancel the auction if there were not sufficient bidders. He further asserted entitlement to indemnification from the Auctioneers for any losses and sought judgment for the difference in the value of the land, for expenses incurred in the auction, lost profits, and reasonable attorney's fees. Wilcox later filed an amended third-party complaint asserting that there was an oral modification of the auction contract and that the Auctioneers were liable on a promissory-estoppel theory. The Auctioneers denied some of the allegations and pled certain affirmative defenses.

The Auctioneers moved for summary judgment, asserting that the deposition testimony showed that Wilcox never requested that the Auctioneers cancel the sale, that there was no evidence of collusion among the bidders, that there was no indemnity agreement between Wilcox and the Auctioneers, and that the auction contract was not subject to oral modification. Wilcox responded to the motion and to the Auctioneers' statement of undisputed facts.

Following a hearing on the motion for summary judgment, the circuit court took the matter under advisement before granting summary judgment to the Auctioneers. Wilcox attempted to appeal, but we dismissed the appeal for lack of a final, appealable order on the motion of the Auctioneers because Shollmier's claims against Wilcox remained pending.



After our dismissal of the earlier appeal, a jury trial was held on Shollmier's complaint for specific performance and breach of contract. The case was submitted to the jury on interrogatories. The jury found that Wilcox and the Auctioneers entered into a contract to sell the real property at absolute auction to the highest bidder, that Shollmier was the highest bidder, and that Wilcox breached the auction contract and the purchase agreement. Prior to trial, Shollmier had elected the remedy of specific performance, and the court accordingly ordered Wilcox to convey the property to Shollmier. This appeal followed.

*Issues on Appeal*

On appeal, Wilcox contends that (1) the court erred in granting summary judgment on the amended complaint because Wilcox presented proof that the Auctioneers were without authority to proceed with the auction; the Auctioneers breached their duty by continuing the auction; the Auctioneers agreed to an oral modification of the auction contract; and (2) that the circuit court erred as a matter of law in granting summary judgment to the Auctioneers on Wilcox's indemnity claim against the Auctioneers; in finding that any alleged modification of the auction contract was required to be in writing; and in finding that Wilcox could not proceed on a promissory-estoppel theory.

*Standard of Review*

Our supreme court has set forth the following standard of review with regard to motions for summary judgment:

> Our standard of review for summary judgment cases is well established. Summary judgment should only be granted when it is clear that there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. The purpose of summary judgment is not to try the issues, but to determine

whether there are any issues to be tried. We no longer refer to summary judgment as a drastic remedy and now simply regard it as one of the tools in a trial court's efficiency arsenal. Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. We view the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties. Moreover, if a moving party fails to offer proof on a controverted issue, summary judgment is not appropriate, regardless of whether the nonmoving party presents the court with any countervailing evidence.

*Harvest Rice, Inc. v. Fritz & Mertice Lehman Elevator & Dryer, Inc.*, 365 Ark. 573, 575–76, 231 S.W.3d 720, 723 (2006) (citations omitted). The standard is whether the evidence is sufficient to raise a fact issue, not whether the evidence is sufficient to compel a conclusion. *Wagner v. Gen. Motors Corp.*, 370 Ark. 268, 258 S.W.3d 749 (2007). A fact issue exists, even if the facts are not in dispute, if the facts may result in differing conclusions as to whether the moving party is entitled to judgment as a matter of law. *Id.* In such an instance, summary judgment is inappropriate. *Id.*

*Discussion*

We address the arguments in a somewhat different order than the parties present in their briefs. Wilcox's main contention is that there was an oral modification of the auction contract whereby the Auctioneers agreed to cancel the auction if there were not sufficient bids being received. Wilcox further argues that the Auctioneers suggested that the auction be called off minutes before it was scheduled to start and that Kaye Wilcox agreed the Auctioneers could cancel the auction.



We find no merit to Wilcox's contention, made in several of his points, that there was an oral modification of the written contract between himself and the Auctioneers. First, the circuit court correctly held that Arkansas Code Annotated section 17-17-112(a) requires that any modifications of the auction contract be in writing.[2] A similar California statute has been deemed to be a statute of frauds for auctioneers. *See Holyfield v. Julien Entertainment.com, Inc.*, 2012 WL 5878380 (C.D. Cal. Nov. 21, 2012) (discussing California Civil Code § 1812.608(d) (2005)).[3] While, as Wilcox argues, the *language* of the California statute is distinguishable from that used in section 17-17-112, it is a distinction without a difference because both statutes are aimed at prohibiting auctioneers from selling property without written agreements with the property owner. Moreover, Wilcox ignores the general rule that a material modification of a contract within the statute of frauds must be in writing in order to be valid and binding. *See Davis v. Patel*, 32 Ark. App. 1, 4, 794 S.W.2d 158, 160 (1990)

---

[2]Arkansas Code Annotated section 17-17-112(a) provides in part that "[a]n auctioneer may not sell the property of another at auction without a prior written contract with the seller which sets forth the terms and conditions upon which the auctioneer will sell the property."

[3]Section 1812.608(d) provides in pertinent part as follows:

In addition to other requirements and prohibitions of this title, it is a violation of this title for any person to do any of the following:

. . . .

(d) Sell goods at auction before the auctioneer or auction company involved has first entered into a written contract with the owner or consignor of the goods, which contract sets forth the terms and conditions upon which the auctioneer or auction company accepts the goods for sale. . . .

SLIP OPINION

(discussing statute of frauds found at Ark. Code Ann. § 4-59-101(a)(4)). We are not bound by the circuit court's interpretation, but in the absence of a showing that the circuit court misinterpreted the law, the circuit court's interpretation will be accepted as correct. *Jackson v. Blytheville Civ. Serv. Comm'n*, 345 Ark. 56, 43 S.W.3d 748 (2001). Because Wilcox has not shown that the circuit court's interpretation of section 17-17-112 as requiring any modification of an auction contract to be in writing is erroneous, we affirm on this point.

Second, any claim that there was an oral modification failed for lack of consideration for the modification. The general rule is that there must be additional consideration when the parties to a contract enter into an additional contract. *Crookham & Vessels, Inc. v. Larry Moyer Trucking, Inc.*, 16 Ark. App. 214, 699 S.W.2d 414 (1985). According to Wilcox, there was consideration in the form of mutual promises that Wilcox would not cancel the auction on the day before in exchange for the Auctioneers' promise to halt the auction if the expected bids were not received. Although mutual promises may be adequate consideration to uphold a contract, the promise must have value to the party agreeing to the change; if no benefit is received by the obligee except what he was entitled to under the original contract, and the other party to the contract parts with nothing except what he was already bound for, there is no consideration for the additional contract. *Feldman v. Fox*, 112 Ark. 223, 164 S.W. 766 (1914); *Capel v. Allstate Ins. Co.*, 78 Ark. App. 27, 77 S.W.3d 533 (2002). As our supreme court has said,

> [i]f, without legal justification, one party to a contract breaks it, or threatens to break it, and to induce performance on his part, the adversary party promises to pay more than was originally agreed upon, no consideration is given for the promise; when the party who threatens to break the contract finally performs, he does no more than he

7

was bound in law to do.

*Feldman*, 112 Ark. at 226, 164 S.W. at 767; *see also Youree v. Eshaghoff*, 99 Ark. App. 4, 256 S.W.3d 551 (2007) (quoting *Feldman*); *Crookham & Vessels*, *supra* (same). That is exactly what Wilcox was attempting to do when he said he wanted to cancel the auction on the day before the sale.

Finally under this point, there is no merit to the argument that Wilcox and the Auctioneers agreed to an oral modification of the auction contract and that the Auctioneers breached the modified contract by proceeding without authority. However, George Wilcox's testimony confirms that the Auctioneers did have the authority to proceed with the sale. He testified that he was not alarmed when Kaye told him that the auction had started and assumed that the Auctioneers must have received a bid over the phone. He continued:

> What am I going to do? Have my daughter go over and ask him what he was doing. I said, hire a man to sell your property for you, and you get a little nervous and you get your confidence back. I had no reason to stop any sale. I had no reason.

Both George Wilcox and Kaye Wilcox admitted that they did not direct the Auctioneers to halt the auction. This testimony not only fails to create a genuine issue of material fact under Ark. R. Civ. P. 56(c) but also contradicts the allegations in count I of Wilcox's amended third-party complaint that such directions were given. Our courts have affirmed summary judgments when the plaintiff/appellant makes a pivotal admission that goes to the heart of the case. *See, e.g.*, *Calcagno v. Shelter Mut. Ins. Co.*, 330 Ark. 802, 957 S.W.2d 700 (1997); *Sublett v. Hipps*, 330 Ark. 58, 952 S.W.2d 140 (1997); *Bushong v. Garman Co.*, 311 Ark. 228, 843 S.W.2d 807 (1992); *King v. Jackson*, 302 Ark. 540, 790 S.W.2d 904 (1990). The same is true

here of Wilcox's admission that he failed to direct the Auctioneers to halt the sale.

We next address Wilcox's argument that the circuit court erred in granting summary judgment on the indemnity claim. The basis for indemnity where, as here, there is no express indemnity contract is liability based upon an implied or quasi-contract. *Larson Mach., Inc. v. Wallace*, 268 Ark. 192, 600 S.W.2d 1 (1980).

Wilcox argues that he is entitled to proceed on his indemnity claim without a written agreement because he is a faultless principal subjected to liability by reason of the faulty conduct of his agent. *See Elk Corp. of Ark. v. Builders Transp., Inc.*, 862 F.2d 663 (8th Cir. 1988). In that case, the Eighth Circuit determined that the courts have applied the doctrine of indemnity in two situations where no express contract was applicable: (1) imputed or vicarious liability and (2) product liability. *Id.* at 666–67. However, Wilcox's claim cannot arise by operation of law under either of these theories. First, the circuit court noted that this is not a case involving vicarious liability. Wilcox, despite his argument that he would not be facing suit had the Auctioneers not mishandled the sale, is not being sued by the buyer Shollmier for the wrongful actions of the Auctioneers. Instead, Wilcox is being sued for his own failure to complete the purchase agreement for the sale of the property. Second, this obviously is not a product-liability case.

Wilcox also argues that there is a special relationship with the Auctioneers by which the relationship and duty created an implied right of indemnity. We disagree. The cases Wilcox cites in support of this argument, *Intents, Inc. v. Southwestern Electric Power Co.*, 2011 Ark. 32, 376 S.W.3d 435, and *Smith v. Paragould Light & Water Commission*, 303 Ark. 109,

793 S.W.2d 341 (1990), both involved statutory schemes which our supreme court found sufficient to support a right of indemnity. In the present case, Wilcox argues that the standard of care for a broker (and presumably an auctioneer selling real property) of ordinary care[4] creates such an implied right of indemnity. However, as pointed out earlier, Wilcox is not being sued for vicarious liability; he is being sued for failure to complete the sale. Under these facts, there is no right to indemnity in this case.

For his fifth point, Wilcox argues that the circuit court erred in granting summary judgment on his promissory-estoppel claim. The court granted summary judgment on the basis that Wilcox could not pursue a promissory-estoppel claim when there was a written contract between the parties. *See Taylor v. George*, 92 Ark. App. 264, 212 S.W.3d 17 (2005). Wilcox does not address the circuit court's ruling that promissory estoppel cannot be asserted when there is a written contract between the parties. Instead, Wilcox's argument simply asserts that promissory estoppel is an alternative basis of recovery to a breach-of-contract claim and that he presented sufficient proof of the oral modification of the written contract. However, "[p]romissory estoppel is not to be used as a vehicle to engraft a promise on a contract that differs from the written terms of the contract." *See Mickens v. Corr. Med. Servs., Inc.*, 395 F. Supp. 2d 748, 752–53 (E.D. Ark. 2005). That is exactly what Wilcox is attempting to do—add new promises to the auction contract. We find no error.

Wilcox's final point is that the Auctioneers breached a duty by not halting the auction

---

[4]*See Edwards v. Pennino*, 276 Ark. 380, 382–83, 635 S.W.2d 246, 248 (1982) (quoting 94 A.L.R.2d 468 (1964) and adopting the standard set forth by this court in *Townsend v. Doss*, 2 Ark. App. 195, 618 S.W.2d 173 (1981)).

SLIP OPINION

once they perceived collusion among the bidders. In his response to the Auctioneers' motion for summary judgment, Wilcox argued that there was a disputed issue of whether the Auctioneers breached their duty by continuing the sale after perceiving collusion. In both its letter opinion and order granting summary judgment, the circuit court found that this issue was not material to Wilcox's claims against the Auctioneers but that it would be dispositive on Shollmier's claim for specific performance against Wilcox. We now know from the final judgment that the issue of collusion was impliedly resolved against Wilcox by the jury in finding that Wilcox breached the purchase agreement.

Wilcox does not address the circuit court's actual ruling. Instead, he continues the argument made below that the issue is whether the Auctioneers breached a duty to him. As authority, Wilcox cites our decision in *Townsend*, *supra*, where we adopted the standard of ordinary care for a real-estate broker. However, that standard does not show that the Auctioneers had a duty to halt the sale once any possible collusion arose. We will not address assignments of error unsupported by citation to supporting legal authority. *Henry v. Mitchell*, 2013 Ark. 246, 428 S.W.3d 454.

Affirmed.

KINARD and BROWN, JJ., agree.

*Newland & Associates, PLLC*, by: *Joel F. Hoover* and *Ashley D. Peoples*, for appellants.

*Lax, Vaughan, Fortson, Jones & Rowe, P.A.*, by: *Grant E. Fortson*, for appellees.