2011 Ark. App. 589

**IC CORPORATION and International Truck & Engine Corporation, Appellants**

v.

**HOOVER TREATED WOOD PRODUCTS, INC., Osmose Holdings, Inc., and Osmose, Inc., Appellees.**

**No. CA 10–1266.**

Court of Appeals of Arkansas.

Oct. 5, 2011.

Rehearing Denied Nov. 9, 2011.

John S. Cherry Jr., Perry Lee Wilson and Benjamin K. Pollitzer, Little Rock, for appellants.

Kevin Arlen Crass, Steven W. Quattlebaum and Kristine Gerhard Baker, Little Rock, Patrick J. Perrone, Newark, NJ, for appellee.

RITA W. GRUBER, Judge.

Appellants International Truck & Engine Corporation and its wholly owned subsidiary IC Corporation (collectively, International) bring this appeal from the order of the Faulkner County Circuit Court granting summary judgment to appellees Osmose Holdings, Inc., and Osmose, Inc. (collectively, Osmose), and Hoover Treated Wood Products, Inc., on the basis that International's claims were barred by the statute of limitations. On appeal, International argues that it did not know of the problems that led to this suit until August 2003, that its claims were subject to a four-year statute of limitations, and that its claims were not subject to a shortened contractual limitations period. We affirm.

International designs and manufactures school buses. Between August 2002 and August 2003, International purchased treated plywood from J.M. McCormick & Co. for use as subflooring in its school buses. The plywood had been treated with alkaline copper quaternary ("ACQ") by Hoover which had, in turn, bought the ACQ chemical from Osmose. After International built school buses with the ACQ-treated plywood, it began to receive complaints from owners of special-needs buses regarding corrosion to aluminum wheelchair tracks and the mounting bolts of wheelchair lifts.

International filed suit on July 31, 2006, against Hoover and Osmose. The complaint set forth claims for breach of warranty, negligence, and strict liability relat-

ed to the treated plywood International installed in its school buses. There was a separate breach-of-contract claim against Hoover.

After extensive discovery, Osmose filed a motion for summary judgment on December 15, 2008. In its motion, Osmose argued that International was aware of the relevant facts more than three years before filing its complaint and, thus, its claims were barred by the three-year statute of limitations contained in the Arkansas Product Liability Act, Ark.Code Ann. § 16–116–101 (Repl.2006). On January 20, 2009, Hoover joined Osmose's motion for summary judgment on the three-year limitations period and also argued that it was entitled to judgment on the basis that International's claims against it were subject to a one-year statute of limitations found in invoice documents between Hoover and McCormick, as permitted by the Uniform Commercial Code.

After hearing argument on the motions for summary judgment, on August 31, 2010, the court issued a letter opinion granting Osmose's and Hoover's motions for summary judgment. The court found that "plaintiff had gone beyond the three-year statute of ₃limitations in which to file their action seeking to recover damages." The court further explained that "not only was the plaintiff aware of the problem created by the corrosive effects of the treated plywood on the aluminum fittings, tracks, and other metallic components that came in contact with them but had made some repairs and in fact had taken some remedial action to isolate the components from the corrosive effects of the plywood and its components." The court's judgment, entered on August 24, 2010, denied all other pending motions as moot. This appeal followed.

Our supreme court has set forth the following standard of review with regard to motions for summary judgment:

Our standard of review for summary judgment cases is well established. Summary judgment should only be granted when it is clear that there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. The purpose of summary judgment is not to try the issues, but to determine whether there are any issues to be tried. We no longer refer to summary judgment as a drastic remedy and now simply regard it as one of the tools in a trial court's efficiency arsenal. Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. We view the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties. Moreover, if a moving party fails to offer proof on a controverted issue, summary judgment is not appropriate, regardless of whether the nonmoving party presents the court with any countervailing evidence.

*Harvest Rice, Inc. v. Fritz & Mertice Lehman Elevator & Dryer, Inc.*, 365 Ark. 573, 575–76, 231 S.W.3d 720, 723 (2006) (citations omitted). The standard is whether the evidence is sufficient to raise a fact issue, not whether the evidence is sufficient to compel a conclusion. *Wagner v.*

*Gen. Motors Corp.*, 370 Ark. 268, 258 S.W.3d 749 (2007). A fact issue exists, even if the facts are not in dispute, if the facts may result in differing conclusions as to whether the moving party is entitled to judgment as a matter of law. *Id.* In such an instance, summary judgment is inappropriate. *Id.* Summary judgment is proper, however, when the statute of limitations bars an action. *Alexander v. Twin City Bank*, 322 Ark. 478, 910 S.W.2d 196 (1995); *Tony Smith Trucking v. Woods & Woods, Ltd.*, 75 Ark.App. 134, 55 S.W.3d 327 (2001).

 The first issue is whether International's claims are barred by the statute of limitations. The Arkansas Products Liability Act of 1979, Ark.Code Ann. §§ 16–116–101 through 16–116–107 (Repl.2006 & Supp.2009), provides a three-year statute of limitations for all product liability actions. Ark.Code Ann. § 16–116–103. Arkansas courts apply the discovery rule to products liability actions. A cause of action accrues when the plaintiff first becomes aware of his or her condition, including both the fact of the injury and the probable causal connection between the injury and the product's use, or when the plaintiff by the exercise of reasonable diligence, should have discovered the causal connection between the product and the injuries suffered. *Martin v. Arthur*, 339 Ark. 149, 3 S.W.3d 684 (1999).

 International argues that it did not know about the corrosion problem caused by the ACQ chemical until preliminary testing was completed in August 2003 and, therefore, the circuit court erred in concluding that International knew of the corrosive properties of ACQ in 2002, more than three years before International filed suit. At times, the beginning of the running of the statute of limitations is a law question to be determined by the circuit court; at other times, it is a fact question

for the jury to determine. *Orsini v. Larry Moyer Trucking, Inc.*, 310 Ark. 179, 833 S.W.2d 366 (1992). Our supreme court has also said that if there is any reasonable doubt as to the application of the statute of limitations, the appellate court should resolve the question in favor of the complaint standing and against the challenge. *State v. Diamond Lakes Oil Co.*, 347 Ark. 618, 66 S.W.3d 613 (2002).

Although the parties spend much of their argument concerned with when International learned of the corrosive properties of ACQ that was applied to the plywood used as flooring in International's school buses, the real issue is whether the record reflects any genuine issue of material fact regarding International's awareness of the corrosion problems and its causal connection to ACQ and the treated plywood more than three years before it filed its complaint. It does not.

David Martin, an engineer for International, testified that in 2001 and 2002 he was the leader of a group assigned to determine options regarding problems International was having with the bus flooring retaining moisture and rotting. At the time, International was using untreated plywood and considering going to treated plywood. One of the treatment agents under consideration was copper Azole, which International was told was no different from untreated plywood. During this time, Martin said that his group was told by Jeff Francis, a salesman for a competing chemical product, that ACQ was more corrosive than copper Azole. Martin said that International knew that ACQ had the potential to be corrosive. Martin passed Francis's warning on to Tom Barkimer, who had to approve all materials used. According to Martin, Barkimer reviewed the materials safety data sheets, which contained a partial list of the components of the compound, and agreed that ACQ would

be more corrosive than [6]copper Azole. Martin also said that Barkimer indicated a preference for copper Azole over ACQ based on its corrosive potential. Martin also acknowledged that in March 2002, International knew that ACQ was more corrosive than copper Azole.

Tom Barkimer's testimony was consistent with Martin's testimony. Barkimer also recalled attending a presentation by another supplier of ACQ that recommended use of stainless steel or galvanized fasteners. He added that, at the time, he was aware that ACQ was more corrosive but did not believe that corrosion would be a major issue.

Michael McCullough, International's field service manager for Florida, testified that International was receiving reports of floor corrosion issues prior to July 15, 2003. He authorized repairs for the buses on July 11, 2003. He said that he observed the corrosion of the wheelchair tracks and the fasteners at that time. According to McCullough, the corrosion was more prominent around the bolt holes in the tracks. His initial reaction was that the tracks were corroded, not that there was a problem with the flooring. McCullough said that someone suggested that there was an indication that the treated plywood was causing the corrosion and this was when the interim solution of using packing tape between the tracks and the flooring was developed. He called this an attempt to confirm whether there was a link between the corrosion and the plywood.

International attempts to lessen the impact of McCullough's testimony by arguing that there was no time reference given. However, a close reading of the testimony indicates that it was prior to the time International started using packaging tape to separate the metal tracks from the treated plywood, which is undisputed and began on July 31, 2003.

[7]It is undisputed that school buses in Florida started experiencing corrosion issues in July 2003. It is also undisputed that International authorized and paid for repairs for those buses in July 2003. International argues that the statute of limitations did not begin to run until, at the earliest August 8, 2003, when its testing suggested a link between the ACQ and the corrosion. According to International, it was not until February 2004 when a conclusive link was established and the statute commenced running. However, International had more than a mere suspicion that the ACQ was causing its corrosion problems prior to August 2003. It was, in fact, taking remedial measures trying to isolate the plywood from the aluminum wheelchair tracks on its buses. It had also asked that its dealers and others retain the corroded materials removed from the buses in February 2003. Moreover, the only change in its manufacturing process was the change from untreated plywood to ACQ-treated plywood in August 2002. The statute of limitations can begin to run even though International may not have known the full extent of the damage caused by the ACQ. *Martin,* 339 Ark. at 159, 3 S.W.3d at 690.

■ International's second point is that the circuit court erred in finding that its claims were subject to the three-year period provided in the Products Liability Act of 1979. International contends that its warranty claim was timely filed because it was subject to the four-year limitations period provided by the Uniform Commercial Code in Ark.Code Ann. § 4-2-725 (Repl.2001). International further argues that its warranty claims are based on "economic loses" it suffered, including lost profits, lost goodwill, and in having to honor warranty claims by repairing the buses

with corroded flooring. Osmose and Hoover argue that the Product Liability Act covers all of International's claims, including those based on warranty. We agree with Osmose and Hoover.

We need not decide whether International's claims for "economic loss" are covered by section 4–2–725 instead of section 16–116–103 because, as International conceded at oral argument, it failed to plead or present evidence as to its lost profits or lost goodwill, matters which must be specifically pled. Ark. R. Civ. P. 9(g); *Renault Central v. Int'l Imports of Fayetteville, Inc.,* 266 Ark. 155, 583 S.W.2d 10 (1979); *see also* Howard Brill, *Arkansas Law of Damages,* § 4:2 (5th ed.2004). As to the remainder of International's warranty claims, we hold that they are also barred by the limitations period of the Products Liability Act instead of the UCC's limitations period. *See Follette v. Wal–Mart Stores,* 41 F.3d 1234 (8th Cir. 1994), *supp. op. on reh'g,* 47 F.3d 311 (8th Cir.1995); *Bodtke v. Stryker Corp.,* 2011 WL 223013 (E.D.Ark.2011); *Harris v. Standardized Sanitation Systems, Inc.,* 658 F.Supp. 438 (W.D.Ark.1987). This is because the Arkansas Products Liability Act defines "product liability actions" as "including *all* actions brought for or on account of personal injury, death, or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging, or labeling of any product." Ark.Code Ann. § 16–116–102(5) (Supp. 2009) (emphasis added). A claim for the costs of repairing the buses with corroded flooring would be a claim for property damage within the meaning of the Products Liability Act.

Finally, International argues that its claims against Hoover were not subject to the one-year limitations period contained on invoices between Hoover and McCormick. International continues that, even if the one-year limitations period applied, it was applicable to only one count of its complaint. Because we affirm the circuit court's judgment that International's claims were barred by the three-year statute of limitations, we need not address this issue because even if we were to reverse on this issue, International's claims would still be barred. Thus, the issue is moot.

Affirmed.

GLADWIN and WYNNE, JJ., agree.