2012 Ark. App. 350

**METRO EMPIRE LAND ASSOCIA-
TION, LLC, Garland Trice, and
Leoma Lambert, Appellants**

v.

**ARLANDS, LLC, and Mark Wilcox
as Commissioner of State
Lands, Appellees.**

No. CA 11–319.

Court of Appeals of Arkansas.

May 16, 2012.

Jesse L. Kearney, Cross & Kearney, PLLC, Pine Bluff, for Appellant.

Stephen E. Whitwell, Hurley & Whitwell, PLLC, North Little Rock, for Appellee.

CLIFF HOOFMAN, Judge.

⌊₁This appeal returns after we ordered rebriefing. *Metro Empire Land Ass'n, LLC v. Arlands, LLC,* 2012 Ark. App. 132, 2012 WL 386757. Appellants Metro Empire Land Association, LLC, Garland

Trice, and Leoma Lambert[1] bring this appeal from the order of the Jefferson County Circuit Court that granted summary judgment in favor of appellee Arlands, LLC, on its suit to quiet title to property purchased at a tax sale conducted by appellee Mark Wilcox, the commissioner of state lands.[2] They assert that the circuit court erred in granting summary judgment and argue that Arlands failed to establish the absence of genuinely disputed facts or that it was entitled to judgment as a matter of law.

The property involved in this litigation is located at 1414 W. 6th, Pine Bluff, Arkansas, and was acquired by Metro in December 2000. The property was certified to the commissioner for nonpayment of taxes in May 2003. In August 2003, a Notice of Delinquent Real Estate Taxes was mailed, via certified mail, return receipt requested, to Metro at its business address, 901 Belmont Drive, Pine Bluff, Arkansas. The notice was returned to the commissioner unclaimed.

Two notices were mailed, via certified mail, on January 10, 2005. The first was addressed to Metro in care of Leoma Lambert at 901 Belmont Drive, Pine Bluff, Arkansas. According to the records of the Arkansas Secretary of State, Lambert was Metro's agent for service. This notice was also returned to the commissioner unclaimed. The other notice was mailed to the current residents of the subject property. This letter was received, but the signature on the receipt returned to the commissioner was illegible.

On April 25, 2005, the commissioner published a Notice of Public Sale informing the public that the property would be sold at auction on May 24, 2005. Arlands purchased the property at the tax sale. The commissioner issued a limited warranty deed to Arlands on June 28, 2005, and it was recorded in the Jefferson County Circuit Clerk's Office on July 6, 2005.

Arlands filed the present action to quiet title to the property on October 13, 2005. Metro filed an answer, a counterclaim, and a third-party complaint in response to the complaint. In its answer, Metro asserted that the commissioner failed to conduct the sale in accordance with the law; that it did not receive actual or constructive notice of the offer to sell the property; and that it failed to receive actual or constructive notice of its right to redeem the property. Both the counterclaim and the third-party complaint alleged that the fair-market value of the property was in excess of $60,000, but sold for $21,000. Metro also asserted that it was never given actual notice that the property was being forfeited, notice of the sale, or notice of its right to redeem. Metro later amended its counterclaim to assert claims for damages under the Betterment Statute and for unjust enrichment.[3]

1. Trice and Lambert were the members of Metro. They were allowed to intervene when, subsequent to the sale to Arlands, Metro lost its charter for failure to pay corporate franchise taxes. Trice and Lambert adopted by reference the pleadings Metro had filed.

2. Wilcox was commissioner of state lands until January 2011, when he was succeeded by the current commissioner, John Thurston. Pursuant to Rule 25(d) of the Arkansas Rules of Civil Procedure, when a public officer is a party to an action in his official capacity and during its pendency ceases to hold office, the action does not abate and his successor is automatically substituted as a party. Ark. R. Civ. P. 25(d); *Fisher v. Chavers*, 351 Ark. 318, 92 S.W.3d 30 (2002).

3. Although Metro raised these issues in its pleadings, it did not argue them before the circuit court. The circuit court's decree denied the counterclaim and all other pending motions with prejudice. Moreover, Metro does not argue the issue on appeal, other than briefly mentioning the claims in its statement of the case and conclusion, resulting in the abandonment of those issues. *See Turnbough*

On April 3, 2006, a partial decree quieting title to the subject property was entered by the circuit court. The order indicated that "[t]he issues which have been raised by [Metro] as set forth in its Answer to the complaint and its Third Party complaint against [the commissioner] shall be reserved and subject to further adjudication before this Court at a subsequent hearing."

Arlands filed a motion for summary judgment on August 31, 2006. Metro asserted in response that the United States Supreme Court, in a case arising in Arkansas,[4] held that due process required that actual notice be given to a property owner before his property could be sold for delinquent taxes. Arlands later withdrew the motion when it appeared that the receipt for the certified-mail notice was for a different parcel of land.

On September 27, 2007, Arlands amended its motion for summary judgment. Metro again relied on *Jones v. Flowers* to contend that actual notice was required. Metro also submitted affidavits from Trice and Lambert in which they denied receiving notice that the property was being forfeited for nonpayment of taxes or that they had the right to redeem the property.[5]

A hearing on the motion for summary judgment was held on November 12, 2010. Following the hearing, the circuit court issued a letter opinion dated November 15, 2010, that granted the motion for summary judgment and quieted title in Arlands "[f]or the reasons stated in [Arlands's] Motions and Brief." The court declined to address the issues of whether Metro was entitled to a post-sale notice or the adequacy of the legal description because they were not raised in a timely fashion. The court's decree was entered on December 1, 2010. Metro filed a timely notice of appeal.

■ Our supreme court has set forth the following standard of review with regard to motions for summary judgment:

Our standard of review for summary judgment cases is well established. Summary judgment should only be granted when it is clear that there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. The purpose of summary judgment is not to try the issues, but to determine whether there are any issues to be tried. We no longer refer to summary judgment as a drastic remedy and now simply regard it as one of the tools in a trial court's efficiency arsenal. Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. We view the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the

---

*v. Mammoth Spring Sch.*, 74 Ark.App. 107, 45 S.W.3d 430 (2001).

4. *Jones v. Flowers*, 547 U.S. 220, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006).

5. It appears that Metro submitted the same affidavits, dated September 18, 2006, from Trice and Lambert in response to Arlands's original and amended motion for summary judgment.

parties. Moreover, if a moving party fails to offer proof on a controverted issue, summary judgment is not appropriate, regardless of whether the nonmoving party presents the court with any countervailing evidence.

*Harvest Rice, Inc. v. Fritz & Mertice Lehman Elevator & Dryer, Inc.,* 365 Ark. 573, 575–76, 231 S.W.3d 720, 723 (2006) (citations omitted). The standard is whether the evidence is sufficient to raise a fact issue, not whether the evidence is sufficient to compel a conclusion. *Wagner v. General Motors Corp.,* 370 Ark. 268, 258 S.W.3d 749 (2007). A fact issue exists, even if the facts are not in dispute, if the facts may result in differing conclusions as to whether the moving party is entitled to judgment as a matter of law. *Id.* In such an instance, summary judgment is inappropriate. *Id.* The issue of notice given to a party with an interest in tax-delinquent land is a matter of statutory interpretation, which we review de novo on the record. *Esterosto, LLC v. Kinsey,* 2010 Ark. App. 429, 374 S.W.3d 907; *Jarsew, LLC v. Green Tree Servicing, LLC,* 2009 Ark. App. 324, 308 S.W.3d 161.

For reversal, Metro argues three points, all addressing the proposition that the circuit court erred in granting summary judgment to Arlands. The three specific points are (1) that Arlands failed to establish the absence of disputed facts so as to justify summary judgment; (2) that Arlands failed to establish that it was entitled to summary judgment as a matter of law; and (3) that the evidence was insufficient to support any judgment in favor of Arlands.

■ Metro first argues that Arlands's motion for summary judgment should be denied because Arlands failed to set forth the facts that it considered to be undisputed. Metro relies on Arkansas Rule of Civil Procedure 56(c)(1), which provides in

pertinent part that the motion "shall specify the issue or issues on which summary judgment is sought." However, this court has held that there is no requirement that a statement of undisputed facts accompany the motion. *Davis v. Little Rock Sch. Dist.,* 92 Ark.App. 174, 211 S.W.3d 587 (2005). Metro has, therefore, shown no basis for reversal on this point.

■ In its brief, Metro also raises several issues that it contends are disputed, including whether the legal description contained in the notice was proper and the lack of a post-sale notice that Metro was entitled to redeem the property. The circuit court asked Metro whether it had raised these issues in its pleadings. Metro admitted that it had not raised the property-description issue, and the court specifically declined to address those issues because they were not properly raised. The failure to obtain a ruling precludes appellate review because there is no order of a lower court on the issue for this court to review on appeal. *Hendrix v. Black,* 373 Ark. 266, 283 S.W.3d 590 (2008); *Baker v. Rogers,* 368 Ark. 134, 243 S.W.3d 911 (2006). Moreover, the requirement of post-sale notice of the right to redeem tax-delinquent property was added in 2007, long after the property in the present case was sold by the commissioner to Arlands, and the pre-sale notices that were sent in this case did advise that the property could be redeemed prior to the sale date by payment of all taxes, interest, penalties, and costs prior to the scheduled May 24, 2005 sale date.

■ The primary defense Metro asserted in its response to the motions for summary judgment was whether due process required actual notice to the property owners prior to tax-delinquent property being sold by the commissioner.

Under Arkansas law, the commissioner was required to "notify the owner, at the owner's last known address as certified by the county, by certified mail, of the owner's right to redeem by paying all taxes, penalties, interest, and costs, including the cost of the notice." Ark.Code Ann. § 26-37-301(a)(1) (Supp.2011). In this case, the commissioner mailed notice to Metro at its business address by certified mail. The commissioner also mailed notice to Metro in care of Lambert at that same address. Both notices stated that the property would be sold on May 24, 2005, and that the property could be redeemed prior to the sale date by payment of all taxes, penalties, interest, and costs. Both notices were returned to the commissioner. Metro argues that the commissioner was required to take additional steps once the notices were returned. However, the commissioner did take additional steps by sending a third notice addressed to the current residents of the property. Metro ignores this fact in its brief and, in fact, states that no further action was taken by the commissioner. This third notice was received, and a receipt was returned to the commissioner. The signature on the receipt was not clearly legible, and although Arlands contends that Trice signed for this third notice, Metro disputes that allegation. Metro does not argue that this creates an issue of fact that precludes summary judgment.

Arlands contends that this case is controlled by our decision in *Esterosto, supra.* In that case, the appellees owned real property that was certified as tax delinquent, and the commissioner sent notice of the delinquency by certified mail to the appellees' home address. The return receipt card was signed, illegibly, and returned to the commissioner. Thereafter, a second notice was sent by certified mail to the actual address of the delinquent property. This notice was returned with

the notation, "no such number." The appellant bought the property several years later in a negotiated sale with the commissioner and filed suit to quiet title to the property. The circuit court denied the petition, finding the appellees' testimony that they did not receive actual notice of the tax sale to be credible. This court then reversed the circuit court's decision, holding that there was no dispute that the commissioner had fully complied with the statutory requirements by mailing notice to the appellees' residence and that, although the statute in effect at that time did not require a return receipt, a receipt was signed and returned to the commissioner, albeit illegibly. *Esterosto* at 4–5, 374 S.W.3d at 909–10. We held that the Due Process Clause did not require the commissioner to investigate every signature to insure that it is in fact the signature of the property owner. *Id.* at 7, 374 S.W.3d at 911.

Metro argues that *Esterosto* is at odds with the United States Supreme Court's decision in *Jones v. Flowers, supra,* which, according to Metro, requires actual notice to property owners. However, we have rejected that argument in several cases, including *Esterosto,* each citing to the language in *Jones* itself that due process does not require that a property owner receive actual notice. *See Esterosto,* 2010 Ark. App. 429, at 6, 374 S.W.3d at 910–11; *Morris v. LandNPulaski, LLC,* 2009 Ark. App. 356, at 6, 309 S.W.3d 212, 216; *Jarsew,* 2009 Ark. App. 324, at 5–6, 308 S.W.3d at 164. Metro also argues that *Esterosto* is distinguishable in that there were no unclaimed notices in that case as there were in the present case. This distinction is irrelevant because, once the notices were returned in the present case, the commissioner complied with due-process requirements and took the further step of sending

notice, which was received, to the current resident of the property.

Metro further contends that Ark.Code Ann. § 26–37–301(e)(1) (Supp.2011) requires actual personal service of notice. Section 26–37–301(e)(1) provides as follows:

> If the Commissioner of State Lands fails to receive proof that the notice sent by certified mail under this section was received by the owner of a homestead that is tax-delinquent land, then the Commissioner of State Lands or his or her designee shall provide actual notice to the owner of a homestead by personal service of process at least sixty (60) days before the date of sale.

Metro's contention is without merit for two reasons. First, there was no evidence that the property at issue in this case was a "homestead," a term that is defined in Ark.Code Ann. § 26–26–1122(a)(1) (Supp. 2011). Second, the situation under which actual notice is required pursuant to this subsection is where the commissioner fails to receive proof that the certified-mail notice was received. In the present case, a signed receipt, indicating that the notice was received, was returned to the commissioner. Therefore, the trigger requiring actual notice was not met.

Affirmed.

GLOVER and ABRAMSON, JJ., agree.